UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HEARTLAND ALLIANCE FOR<br>HUMAN NEEDS & HUMAN RIGHTS<br>d/b/a NATIONAL IMMIGRANT<br>JUSTICE CENTER<br>208 S. LaSalle St., Suite 1300<br>Chicago, IL 60604<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES IMMIGRATION<br>AND CUSTOMS ENFORCEMENT<br>Washington, DC 20536,<br><br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY<br>Washington, DC 20528,<br><br>and<br><br>OFFICE OF MANAGEMENT<br>AND BUDGET<br>725 17th Street, NW<br>Washington, DC 20503<br><br>    Defendants. | Civil Action No. _____ |

## COMPLAINT

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., seeking the release of withheld records that generally concern the so-called "Detention Bed Quota" a.k.a. the "Detention Bed Mandate."  The Heartland

Alliance for Human Needs & Human Rights d/b/a National Immigrant Justice Center ("NIJC") filed FOIA requests with United States Immigration and Customs Enforcement ("ICE") and the Office of Management and Budget ("OMB") relating to the government's actions, policies, guidelines, and procedures for maintaining and/or filling beds in detention facilities used to house ICE detainees.  NIJC seeks declaratory, injunctive, and other appropriate relief with respect to the unlawful withholding of these records by the United States Department of Homeland Security ("DHS") and its component ICE as well as OMB.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 552(a)(4)(B).  In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706.  This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

3. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) as the defendants are located in the District of Columbia and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## **THE PARTIES**

4. Plaintiff NIJC, located in Chicago, Illinois, is a nonprofit entity under Section 501(c)(3) of the Internal Revenue code. Dedicated to ensuring human rights protections and access to justice for all immigrants, refugees, and asylum seekers, NIJC provides direct legal services to and advocates for these populations through policy reform, impact litigation, and public education. Through its work, NIJC advocates for individual clients as well as for broad-based systemic change.

5. Defendant DHS is a Department of the Executive Branch of the United States government, located in Washington, DC, and is responsible for enforcing federal immigration laws. DHS has possession, custody, and control over the records sought by plaintiff. DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

6. Defendant ICE is a component of DHS, located in Washington, DC, and is responsible for enforcing federal laws governing border control, customs, trade and immigration to promote homeland security and public safety. ICE has possession, custody, and control over the records sought by plaintiff. ICE is an agency within the meaning of 5 U.S.C. § 552(f)(1).

7. Defendant OMB is a component of the Executive Office of the President and is responsible for developing and supporting the President's management, budget, and legislative agenda. OMB has possession, custody, and

control over the records sought by plaintiff.  OMB is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## NATURE OF THE ACTION

8. The Consolidated Appropriations Act, 2016, which was signed into law by the President on December 18, 2015, included a requirement yet again that funding made available to ICE "shall [be used to] maintain a level of not less than 34,000 detention beds" for immigration-related detainees  *See* Exhibit 1, available at https://www.congress.gov/114/bills/hr2029/BILLS-114hr2029enr.pdf.  This minimum (in earlier years, set at 33,400 beds) has come to be known as the "detention bed quota" or the "detention bed mandate," because the appropriations language "maintain" has been interpreted to mean "maintain *and fill*," on average, that many beds in privately owned detention facilities operated by for-profit corporations, state and county jails, as well as federal detention facilities.  *See, e.g.,* Exhibit 2 at 4, available at https://immigrationforum.org/wp-content/uploads/2014/10/Math-of-Immigration-Detention-August-2013-FINAL.pdf.

9. BLOOMBERG has described the average detention target set by Congress as a "statutory quota on how many people to hold behind bars."  Exhibit 3, William Selway and Margaret Newkirk, *Congress Mandates Private Jail Beds for 34,000 Immigrants*, BLOOMBERG, Sept. 24, 2013, available at

http://www.bloomberg.com/news/articles/2013-09-24/congress-fuels-private-jails-detaining-34-000-immigrants.

10.     The LOS ANGELES TIMES published an editorial highly critical of the detention target: "For Congress to set a quota of how many people should be jailed each night conflicts with Americans' basic notions of justice.  Whether someone requires detention should be decided by need, as calculated by judges and others charged with enforcing immigration laws, not [] by an arbitrary congressional budget mandate."  Exhibit 4, *Editorial: Dump the Immigrant Detainee Quota*, LOS ANGELES TIMES, May 8, 2014, available at http://www.latimes.com/opinion/editorials/la-ed-immigrant-detainee-quota-homeland-security-20140509-story.html.

11.     THE NEW YORK TIMES also published an editorial questioning the detention bed mandate: "Why make the people who run a vast and expensive law-enforcement apparatus responsible for keeping prison beds warm rather than communities safe — especially when there are low-cost alternatives to detention that don't involve fattening the bottom lines of for-profit prison corporations?"  Exhibit 5, *Editorial: Detention Must Be Paid*, THE NEW YORK TIMES, Jan. 20, 2014, available at http://www.nytimes.com/2014/01/21/opinion/detention-must-be-paid.html?smid=tw-share&_r=1.

12. As the WASHINGTON POST reported, "critics of the mandate note that the majority of ICE detainees are not violent offenders. Immigration judges eventually allow many to remain in the United States, but the detainees may spend months in costly federal custody, even when far cheaper alternatives are available, such as ankle bracelets and other forms of electronic monitoring." Exhibit 6, Nick Miroff, *Controversial Quota Drives Immigration Detention Boom*, THE WASHINGTON POST, Oct. 13, 2013, available at https://www.washingtonpost.com/world/controversial-quota-drives-immigration-detention-boom/2013/10/13/09bb689e-214c-11e3-ad1a-1a919f2ed890_story.html.

13. The monetary cost of the detention bed mandate is staggering. In its proposed budget for DHS, Congress allocated over $2.3 billion to ICE for "Custody Operations, including funding necessary to maintain the requested number of detention beds." *See* Exhibit 7, Division F – Department of Homeland Security Appropriations Act, 2016, available at http://docs.house.gov/meetings/RU/RU00/20151216/104298/HMTG-114-RU00-20151216-SD007.pdf; *see also* Exhibit 1.

14. Only through transparency can the public have confidence in the integrity of the government's policies, guidelines, procedures, and actions with respect to maintaining and/or filling beds in detention facilities used to house ICE detainees. To this end, NIJC submitted its FOIA requests to ICE and OMB in an

effort to obtain pertinent information to inform the legal community and the public about ICE detention, release, and bond policies and procedures.  Specifically, NIJC seeks to determine, *inter alia*, whether ICE has adopted uniform detention, release, and bond policies that are independent from bed space inventory and/or from ICE quotas or performance objectives.  Providing the requested information will likely contribute significantly to understanding current practices at ICE, as well as identifying potential grounds for seeking to adjust such practices.

**PLAINTIFF'S FOIA REQUESTS AND
DEFENDANTS' FAILURE TO COMPLY WITH FOIA**

**First FOIA Request**

15. By letter dated July 1, 2014, NIJC submitted a FOIA request to ICE ("First FOIA Request") in which it requested the following:

> **ICE's San Antonio and Seattle Areas of Responsibility (AORs)**
>
> - daily, weekly, bi-weekly, and/or monthly Records of the bed space inventory in ICE's San Antonio and Seattle AORs from June 1, 2013 through November 30, 2013, including the number of vacant beds and the detainee population, broken down by gender, individuals subject to mandatory custody, individuals subject to non-mandatory custody, and by the alleged custodial authority (e.g., INA §§ 236(a), 236(c), 241, 235);
>
> - daily, weekly, bi-weekly, and/or monthly Records of bond amounts for detainees in ICE's San Antonio and Seattle AORs from June 1, 2013 through November 30, 2013, including the detainee's gender, whether the individual was subject to mandatory custody, and the alleged custodial authority for each individual (e.g., INA §§ 236(a), 236(c), 241, 235);

- any Records concerning the setting and calculation of bond amounts for detainees in ICE's San Antonio and Seattle AORs from June 1, 2013 to the present, including but not limited to all communications (e.g., transmittals, letters, emails, memoranda, and reports, instructions, and summaries) related thereto;

**Nationwide ICE-Related Detention (a.k.a. the Detention Bed Quota)**

- any Records dated between January 1, 2009 and the present which set out or reflect approved policies, guidelines, or procedures for maintaining and/or filling (i) a level of not less than 33,400 detention beds and/or (ii) a level of not less than 34,000 detention beds, including all communications (*e.g.,* transmittals, letters, emails, memoranda, and reports, instructions, and summaries) related thereto (such as to, from, or within ICE headquarters, an ICE field office, or an ICE AOR);

- any Records dated between January 1, 2009 and the present which set out or reflect an assessment of compliance with any statutory requirement for maintaining and/or filling (i) a level of not less than 33,400 detention beds and/or (ii) a level of not less than 34,000 detention beds;

- any Records from January 1, 2009 through the present which set out or reflect approved policies, guidelines, or procedures for appraising the performance of ICE personnel, Field Offices, or AORs related to maintaining and/or filling beds in detention facilities used to house ICE detainees;

- any Records from January 1, 2009 through the present which set out or reflect approved policies, guidelines, or procedures for requesting and/or setting and/or calculating bond amounts for apprehended and/or detained individuals based on the presence of vacant beds in an ICE detention facility.

*See* Exhibit 8.

16.     By letter dated July 10, 2014, ICE and DHS acknowledged receipt of the First FOIA Request and assigned it as ICE FOIA Case Number 2014-ICFO-02072.  *See* Exhibit 9.

17.     In their response to the First FOIA Request by letter dated February 19, 2015 ("First FOIA Request Response"), ICE and DHS identified 387 pages and 123 Excel spreadsheets as responsive to the First FOIA Request.  Of those records, 247 pages and 123 Excel spreadsheets were released in their entirety and remaining pages were withheld in part or their entirety pursuant to: FOIA Exemption 6 (personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy); FOIA Exemption 7(C) (records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy); and FOIA Exemption 7(E) (records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law).  *See* Exhibit 10.

18.     NIJC filed an administrative appeal in connection with the First FOIA Request Response on April 19, 2015 ("First FOIA Appeal").  In particular, NIJC appealed the withholding of records (or portions thereof) based on:

- a blanket assertion of FOIA Exemptions and/or without any meaningful explanation;

- unreadable production pages of responsive records;

- production pages from a spreadsheet that could not be reconstructed; and

- incomplete searches for responsive records including, *inter alia*, failure to produce *any* responsive records for certain categories of requested records.

*See* Exhibit 11.

19. By letter dated April 21, 2015, ICE and DHS acknowledged receipt of the First FOIA Appeal and assigned it tracking number 2015-ICAP-00323. *See* Exhibit 12.

20. By letter dated May 15, 2015, ICE and DHS determined that "[u]pon review of the administrative record and your appeal letter . . . ICE has determined that new search(es) or, modifications to the existing search(es), could be made. ICE is therefore remanding your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents." *See* Exhibit 13.

21. NIJC filed a supplemental administrative appeal in connection with the First FOIA Request Response on May 29, 2015 ("First Supplemental FOIA Appeal"). In particular, NIJC appealed the withholding of records (or portions thereof) located in a separate search by OMB (in connection with a separate FOIA

request to be discussed below) which had been referred to ICE for processing and direct response to NIJC.  *See* Exhibit 14.

22.  By letter dated June 3, 2015, ICE and DHS acknowledged receipt of the First Supplemental FOIA Appeal.[1]  *See* Exhibit 15.

23.  NIJC has not received any further response determination in connection with the First FOIA Request.

**Second FOIA Request**

24.  By letter dated July 1, 2014, NIJC submitted a FOIA request to OMB ("Second FOIA Request") in which it requested the following with respect to nationwide ICE-related detention (a.k.a. the detention bed quota):

- any Records dated between January 1, 2009 and the present which set out or reflect approved policies, guidelines, or procedures for maintaining and/or filling (i) a level of not less than 33,400 detention beds and/or (ii) a level of not less than 34,000 detention beds, including all communications (e.g., transmittals, letters, emails, memoranda, and reports, instructions, and summaries) related thereto (such as to, from, or within ICE headquarters, an ICE field office, or an ICE AOR);

- any Records dated between January 1, 2009 and the present which set out or reflect an assessment of compliance with any statutory requirement for maintaining and/or filling (i) a level of not less than 33,400 detention beds and/or (ii) a level of not less than 34,000 detention beds;

---

[1] The June 3, 2015 letter from ICE and DHS indicated that it concerned ICE FOIA case number 2014-ICFO-*07937*, and assigned the appeal tracking number 2015-ICAP-*00417*.  NIJC is unaware of whether these separate FOIA tracking numbers were specifically assigned for the records referred from OMB to ICE.

- any Records from January 1, 2009 through the present which set out or reflect approved policies, guidelines, or procedures for appraising the performance of ICE personnel, Field Offices, or AORs related to maintaining and/or filling beds in detention facilities used to house ICE detainees;

- any Records from January 1, 2009 through the present which set out or reflect approved policies, guidelines, or procedures for requesting and/or setting and/or calculating bond amounts for apprehended and/or detained individuals based on the presence of vacant beds in an ICE detention facility.

*See* Exhibit 16.

25. By email dated July 11, 2014, OMB acknowledged the Second FOIA Request and assigned it OMB FOIA number 14-130. *See* Exhibit 17.

26. Having received no response to the Second FOIA Request, NIJC filed an administrative appeal on September 6, 2014 ("Second FOIA Appeal"). In particular, NIJC appealed the constructive denial of the Second FOIA Request in view of OMB's failure to provide a response determination within the statutory time limits. NIJC stated that responsive records clearly exist based on the discussion of such OMB records in a report issued by the Department of Homeland Security's Office of Inspector General entitled "ICE's Release of Immigration Detainees." *See* Exhibit 18; Exhibit 19, OIG-14-116 (Revised), August 2014, at 1, 9-10, *available at* http://www.oig.dhs.gov/assets/Mgmt/2014/OIG_14-116_Aug14.pdf.

27. In a response to the Second FOIA Request by letter dated September 9, 2014 ("Second FOIA Request Response"), OMB identified two documents totaling 6 pages but stated that "[t]hese documents originated with ICE" and they were "referred . . . to that agency for processing and direct response to [NIJC]." OMB did not acknowledge the Second FOIA Appeal. *See* Exhibit 20.

28. NIJC filed a supplemental administrative appeal in connection with the Second FOIA Request Response on September 12, 2014 ("Second Supplemental FOIA Appeal"). In particular, NIJC appealed the Second FOIA Request Response because "the scope of OMB's search [did] not match the scope of the [Second] FOIA Request." *See* Exhibit 21.

29. By letter dated September 18, 2014, OMB acknowledged the Second FOIA Appeal and assigned it OMB FOIA number 14-154. *See* Exhibit 22.

30. By letter dated September 30, 2014, OMB stated that because "[NIJC's] September 12, 2014 appeal incorporates and supplements [NIJC's] September 6, 2014 appeal, OMB will process these matters as one appeal." The appeal continued to be assigned a FOIA tracking number of 2014-154. *See* Exhibit 23.

31. NIJC has not received any further response determination in connection with the Second FOIA Request.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. NIJC has exhausted any and all administrative remedies with respect to ICE, DHS, and OMB in connection with the First FOIA Request and the Second FOIA Request.

## FIRST CAUSE OF ACTION:
**Violation of the Freedom of Information Act for Failure to Disclose Agency Records With Respect to the First FOIA Request**

33. NIJC repeats and re-alleges paragraphs 1-32 above.

34. NIJC has a legal right under FOIA to obtain the agency records requested from defendants ICE and DHS in the First FOIA Request, and no legal basis exists for defendants' failure to make available the requested records.

35. Defendants' failure to make reasonable efforts to search for responsive records, and wrongful withholding of agency records, sought in plaintiff's First FOIA Request violates FOIA, 5 U.S.C. §§ 552(a)(3)(A) & 552(a)(3)(C), as well as the ICE and DHS regulations promulgated thereunder.

36. NIJC is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

## SECOND CAUSE OF ACTION:
**Violation of the Freedom of Information Act for Failure to Disclose Agency Records With Respect to the Second FOIA Request**

37. NIJC repeats and re-alleges paragraphs 1-36 above.

38. NIJC has a legal right under FOIA to obtain the agency records requested from defendants OMB, ICE, and DHS in the Second FOIA Request, and no legal basis exists for defendants' failure to make available the requested records.

39. Defendants' failure to make reasonable efforts to search for responsive records, and wrongful withholding of agency records, sought in plaintiff's Second FOIA Request violates FOIA, 5 U.S.C. §§ 552(a)(3)(A) & 552(a)(3)(C), as well as the OMB, ICE, and DHS regulations promulgated thereunder.

40. NIJC is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

### THIRD CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for Failure to Timely Respond to Request for Agency Records With Respect to the First FOIA Request**

41. NIJC repeats and re-alleges paragraphs 1-40 above.

42. The failure of defendants ICE and DHS to timely respond to NIJC's First FOIA Request for agency records, and defendants' withholding of agency records, constitutes agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06.  The failure of defendants ICE and DHS to timely respond and their withholdings each are arbitrary, capricious, an

abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

43. NIJC is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records with respect to the First FOIA Request.

### FOURTH CAUSE OF ACTION:
### Violation of the Administrative Procedure Act for Failure to Timely Respond to Request for Agency Records With Respect to the Second FOIA Request

44. NIJC repeats and re-alleges paragraphs 1-43 above.

45. The failure of defendants OMB, ICE, and DHS to timely respond to NIJC's Second FOIA Request for agency records, and defendants' withholding of agency records, constitutes agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. The failure of defendants OMB, ICE, and DHS to timely respond and their withholdings each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

46. NIJC is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records with respect to the Second FOIA Request.

## **REQUESTS FOR RELIEF**

WHEREFORE, NIJC requests that judgment be entered in its favor and against defendants, and that:

a) defendants and any of defendants' agents or other persons, departments, or components acting for, with, by, through or under them be ordered to conduct a reasonable search for records responsive to NIJC's requests under the Freedom of Information Act;

b) defendants and any of defendants' agents or other persons, departments, or components acting for, with, by, through or under them be enjoined and restrained from continuing to withhold records relevant to NIJC's requests under the Freedom of Information Act and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under the Freedom of Information Act and order defendants to disclose the requested records in their entireties and make copies available to NIJC;

d) the Court enter a judgment awarding NIJC reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to NIJC as this Court deems just, proper and equitable.

Dated:  February 5, 2016

Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
    Email:  watkins@adduci.com
ADDUCI, MASTRIANI & SCHAUMBERG, LLP
1133 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 407-8647
Facsimile: (202) 466-2006

Of Counsel:
Mark M. Fleming*
    Email:  MFleming@heartlandalliance.org
HEARTLAND ALLIANCE FOR
HUMAN NEEDS & HUMAN RIGHTS
D/B/A NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle St., Suite 1300
Chicago, IL 60604
Telephone: (312) 660-1628
Facsimile: (312) 660-1505

*moving for admission *pro hac vice*

*Attorneys for Plaintiff*
*Heartland Alliance for Human*
*Needs & Human Rights*
*d/b/a National Immigrant Justice Center*